**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| BARBARA HORNBECK and CATHY DEMARIA-MCKAY, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BOYNE USA, INC., BOYNE PROPERTIES, INC., BOYNE MOUNTAIN RESORT, LLC, THE MOUNTAIN GRAND LODGE & SPA, LLC, BOYNE HIGHLANDS RESORT, LLC, and HEATHER HIGHLANDS INN, INC. <br><br> Defendants. | Case No. _____ <br><br><br> **CLASS ACTION** <br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Barbara Hornbeck and Cathy Demaria-McKay, individually and on behalf of all others similarly situated, bring this class action against Defendants and allege as follows:

## INTRODUCTION

1.      This action arises from various realty purchase opportunities at three Michigan resorts owned by Boyne USA: the Boyne Mountain Resort, The Highlands at Harbor Springs, and the Inn at Bay Harbor (collectively "Boyne Michigan Properties"). Those realty opportunities include condominium hotels, hotel suites, villas, cabins, cottages, and townhomes (collectively, "Condos"). Boyne developed the Boyne Michigan Properties. One of the main features of the Boyne Michigan Properties is an exclusive rental management program operated by Boyne.

2.      Boyne drafted the Master Deeds for each of the Boyne Michigan Properties. The Master Deeds cannot be amended without Boyne's consent. The Master Deeds require realty

1

owners to use Boyne as their exclusive rental agent and prohibit any realty owner from using any other person or entity as a rental agent. Boyne requires realty owners to sign a Rental Management Agreement ("RMA") to participate in the rental management program. The terms of the RMA are non-negotiable and can be unilaterally changed by Boyne.

3.     Boyne has exclusive control over the rental of realty in the rental management program. Boyne uses that control to improperly siphon revenue that should be shared with realty owners. Boyne (a) controls what rooms are rented and at what rates (reserving to its own competing rooms the highest rates and longest lengths of stay); (b) controls the deals it provides (discount packages and discounted rooms, again, favoring itself with package options that benefit it, such as providing reduced costs for skiing or golfing, or complimentary breakfast, to the detriment of room rates for Condo owners); and, (c) conceals its conduct from realty owners, by failing to disclose room rates and amounts that Boyne pays to itself out of revenue generated by the rental management program in the statements Boyne provides to owners.

4.     At the same time, Boyne uses the control it granted to itself through the Master Deed and the Rental Management Agreement to impose both excessive management fees and costs on realty owners, including costs of insurance, maintenance, upkeep and repair, and remodeling. Condo owners are unaware that Boyne is suppressing their rental income and inflating remodeling costs. Boyne uses the costs of remodeling (and the low rental revenues) to intimidate Condo owners into selling their Condos back to Boyne at prices below fair market value.

5.     The arrangement created by Boyne is illegal and has damaged Plaintiffs and Class Members as set forth herein.

## PARTIES

6.     Plaintiff Barbara Hornbeck is a citizen of Michigan and paid for or rented a Condo during the Class Period in the Boyne Mountain Grand Lodge and Spa.

7.     Plaintiff Cathy Demaria-McKay is a citizen of Michigan and paid for or rented a Condo during the Class Period in the Alpine Village.

8.     Defendant Boyne USA, Inc. is a Michigan corporation with its principal place of business at 3951 Charlevoix Avenue, Petoskey, Michigan 49770.

9.     Defendant Boyne Properties, Inc. is a Michigan corporation with its principal place of business at 3951 Charlevoix Avenue, Petoskey, Michigan 49770.

10.    Defendant Boyne Mountain Resort, LLC is a wholly owned subsidiary of Boyne USA, Inc. located at 1 Boyne Mountain Road, Boyne Falls, Michigan 49713.

11.    Defendant The Mountain Grand Lodge and Spa, LLC is a wholly owned subsidiary of Boyne USA, Inc. located at 1 Boyne Mountain Road, Boyne Falls, Michigan 49713.

12.    Defendant Boyne Highlands Resort, LLC is a wholly owned subsidiary of Boyne USA, Inc. located at 600 Highlands Drive, Harbor Springs, Michigan 49740.

13.    Defendant Heather Highlands Inn, Inc. is a wholly owned subsidiary of Boyne USA, Inc. located within The Highlands at Harbor Springs at 600 Highlands Drive, Harbor Springs, Michigan 49740.

## JURISDICTION AND VENUE

14.    The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 and pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1332(d), because the Class has more than one hundred members, the amount of controversy exceeds $5 million, exclusive of interest and costs, and some members of the Class are citizens of states different than Defendants.

15.    The Court has personal jurisdiction over Defendants Boyne USA, Inc., Boyne Mountain Resort, LLC, Boyne Properties, Inc., The Mountain Grand Lodge and Spa, LLC, Boyne

Highlands Resort, LLC, and Heather Highlands Inn, Inc. because they are incorporated and have their principal place of businesses in this judicial district.

16.     Venue is proper in the district under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district, and therefore, reside in this district for the purposes of 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims in this case occurred in this district.

## BACKGROUND AND FACTUAL ALLEGATIONS

### I.     Boyne developed the Boyne Michigan Properties.

#### a.  *Boyne Mountain Resort*

17.     Boyne owns and operates Boyne Mountain Resort, a ski resort just outside Boyne Falls, Michigan.

18.     Boyne developed a hotel connected to the Avalanche Bay Indoor Waterpark in Boyne Mountain Resort known as the Mountain Grand Lodge and Spa.

19.     Mountain Grand Lodge and Spa consists of 220 hotels rooms and several one-, two- and three-bedroom suites.

20.     The Mountain Grand Lodge and Spa suites are available for private ownership.

21.     Boyne developed condominiums located along the shore of Deer Lake in Boyne Mountain Resort known as the Deer Lake Villas.

22.     Boyne developed cabins located off the beaten path in the Boyne Mountain Resort known as The Mountain Cabins.

23.     Boyne developed condominiums located at the base of Boyne Mountain in the Boyne Mountain Resort known as Creekside.

24.     Boyne developed condominiums located between ski runs in the Boyne Mountain Resort known as the Village at Disciples Ridge.

25.     Boyne developed condominiums located at the base of Boyne Mountain in the Boyne Mountain Resort known as the Mountain Villas.

### b.  The Highlands at Harbor Springs

26.     Boyne owns and operates The Highlands at Harbor Springs, a ski and gold resort in Harbor Springs, Michigan.

27.     Boyne developed condominiums located at the base of The Highlands at Harbor Springs known as the Heather Highlands Inn.

28.     Boyne developed condominiums located near North Peak Pass in The Highlands at Harbor Springs known as the Alpine Village.

29.     Boyne developed townhomes located along the Arthur Hills Golf Course in The Highlands at Harbor Springs known as the Arthur Hills Townhomes.

30.     Boyne developed cottages located adjacent to the Donald Ross Memorial Golf Course and the Arthur Hills Golf Course in The Highlands at Harbor Springs known as the Ross Cottages.

31.     Boyne developed townhomes located across from The Moor Golf Course in The Highlands at Harbor Springs known as the Heather Highlands Townhomes.

### c.  Inn at Bay Harbor

32.     Boyne owns and operates the Inn at Bay Harbor, a resort in Bay Harbor, Michigan.

33.     Boyne developed a hotel located on Lake Michigan in the Inn at Bay Harbor Resort known as the Inn at Bay Harbor.

34.     Boyne developed cottages located near the waterfront and adjacent to the Inn at Bay Harbor in the Inn at Bay Harbor Resort known as the Lakeside Cottages.

35.     Boyne developed cottages located along the Crooked Tree Golf Course in the Inn at Bay Harbor Resort known as the Crooked Tree Cottages.

### d. Developer Boyne USA

36.     Private individuals or entities own a significant amount of the residential realty in the Boyne Michigan Properties.

37.     Boyne is also an owner of residential realty in the Boyne Michigan Properties.

38.     Boyne owns all of the commercial realty in the Boyne Michigan Properties.

39.     To obtain certain financial benefits, Boyne chose to develop the Boyne Michigan Properties with realty available for purchase by the public, rather than hotels or properties wholly owned by Boyne.

40.     Developing property as a type of condominium-hotel allows a developer to sell the realty and earn a profit much faster than a normal hotel, providing a quicker return on capital.

41.     It also enabled Boyne to obtain favorable financing terms to construct the Boyne Michigan Properties.

42.     Developing a condominium-hotel or similar realty, standing alone, is not improper.

43.     However, beginning in 1973, the Securities and Exchange Commission alerted developers to the "applicability of the federal securities laws to the offer and sale of condominium realty, or other realty in a real estate development, coupled with an offer or agreement to perform or arrange certain rental or other services for the purchaser." Guidelines as to the Applicability of the Federal Securities Laws to Offers and Sales of Condominiums or Units in a Real Estate Development, Release No. 5347, SEC (January 4, 1973). "The Commission noted that such offerings may involve the offering of a security in the form of an investment contract" and that in such event "any such securities must comply with the registration and prospectus delivery requirement of the Securities Act" and the person selling those securities would have to register as a broker or dealer with the Commission. *Id*.

44.     For example, "the condominium unit may be offered with a contract or agreement that places restrictions, such as required use of an exclusive rental agent or limitations on the period of time the owner may occupy the unit, on the purchaser's occupancy or rental of the property purchased. Such restrictions suggest that the purchaser is in fact investing in a business enterprise, the return from which will be substantially dependent on the success of the managerial efforts of other persons. In such cases, registration of the resulting investment contract would be required." *Id*.

45.     Boyne's contractual arrangement, which requires the use of an exclusive rental agent as described below, constitutes an investment contract and, thus, a security. Yet, Boyne has not registered the resulting investment contracts.

46.     Moreover, Boyne has used its position as the developer of the Boyne Michigan Properties to grant itself an improper degree of control of the properties. Boyne used that control to improperly extract profits that justifiably belong to Plaintiffs and Class Members while simultaneously imposing unreasonable costs on Plaintiffs and Class Members.

**II.     Boyne requires owners of realty in Boyne Michigan Properties to use Boyne as their rental manager and charges an excessively high rate for its services.**

47.     Boyne promoted and marketed realty in Boyne Michigan Properties as investments to prospective purchasers.

48.     Boyne made representations to purchasers of Condos regarding the economic benefits of realty ownership.

49.     Boyne prepared and drafted Master Deeds for the Boyne Michigan Properties.

50.     The Master Deeds all require Condo owners to use Boyne (or a leasing agent designated by Boyne) as the rental agent and prohibit realty owners from using any other person or entity as the rental agent.

51.     For example, the Master Deeds of the Mountain Grand Lodge Condominium state that "[a] Co-owner may not lease his Unit unless the Unit is leased only through Developer or a leasing agent designated by Developer, pursuant to Developer's or such leasing agent's then current leasing agency/management agreement for the Condominium, and upon such terms and conditions as Developer or such leasing agent may require, in their sole discretion. Developer may lease any number of Units in the Condominium, for any period of time, without the use of a leasing agent, upon such terms and conditions as Developer may determine, in Developer's sole discretion." Ex. 1, Master Deed – The Mountain Grand Lodge Condominium, Art. VI, Sec. 18(C) of Exhibit "A"; Ex. 3, Master Deed – The Alpine Village Condominium, Art. VI, Sec. 18(C) of Exhibit "A".

52.     The Master Deeds cannot be amended without Boyne's consent.

53.     To lease Condos, Boyne requires that each realty owner employ Boyne as their agent pursuant to the terms of the RMA.

54.     Boyne prepared and drafted the Rental Management Agreement.

55.     The terms of the Rental Management Agreement are non-negotiable.

56.     The RMA provides that "[i]n consideration for Agent's rental management services on behalf of Owner, Owner agrees to pay to Agent a management fee equal to 50% of gross rental receipts (*after the payment* of hotel or resort taxes, resort fees, group tour and convention facility fees, incentive program costs, franchise-related fees and costs or any other such costs)." Ex. 2, The Mountain Lodge & Spa Rental Management Agreement, ¶ 12 (emphasis added).

57.     Boyne effectively pockets 50% of the net rental revenues, which Boyne alone determines. Net costs are determined under Boyne's discretion and, other than what is listed in the

unilaterally amendable RMA, costs are unknown and unknowable to Plaintiffs and the Class. *See infra* § IV (Boyne provides limited accounting information to realty owners).

58.     Similarly, rates charged for rental management services at resorts like Boyne Mountain, The Highlands at Harbor Springs, and Inn at Bay Harbor—which do not require owners to use the developer as rental manager—charge far less than 50%.

### III.    Boyne manipulates the rental management program for its benefit and at the expense of realty owners.

59.     Guests at the Boyne Michigan Properties use a central reservation system created and operated by Boyne.

60.     As rental manager, Boyne is able to rent its own Condos (those wholly owned by Boyne) to resort guests before booking guests in Condos owned privately in Boyne Michigan Properties. Or when it works to Boyne's advantage, Boyne can rent privately-owned Condos to resort guests before renting their own, leaving the high-demand, high-rate bookings for itself. As an example, for in-season dates Boyne may rent private Condos to the guests who book months in advance but wait to rent their own Condos until closer to the high-demand date when prices are elevated. In short, Condo assignments are not random or fair; rather, Boyne manipulates bookings for its benefit and to the detriment of Plaintiffs and the Class.

61.     Boyne also manipulates packages and discounts for its own benefit and to the detriment of Plaintiffs and the Class. For example, Boyne will sell discounted packages to guests that include room rentals along with skiing or golf. When Boyne sells a package, it discounts only the portion of the package allocated to room rentals. Boyne does not equally discount the portion of the package allocated to lift tickets or greens fees. This harms Plaintiffs and the Class because only revenue from room rentals is shared with Condo owners.

62.     Boyne also controls the rental rate for realty listed in the central reservation system.

63.     All rooms are advertised and booked based on a base lodging rate.

64.     Depending on the property, guests may have to pay a separate fee for breakfast, if they choose for it to be included.

65.     However, some properties do not provide guests the option to pay a separate fee for breakfast. These properties instead include this fee in the base lodging rate advertised to guests.

66.     Further, guests are required to pay additional fees for estimated taxes and resort fees.

67.     The resort fee is not a tax. It is a fee Boyne charges to shift funds to itself at the expense of Condo owners.

68.     Payments made by guests for the resort fee are deposited in Boyne's general fund.

69.     The resort fee is part of the gross rental revenue of the rental Condos.

70.     At first, Boyne did not charge a resort fee to guests who booked rooms in Boyne Michigan Properties.

71.     Around 2000, Boyne began charging a resort fee on all bookings made through the central reservation system.

72.     The initial resort fee was 3%.

73.     The resort fee has gradually increased over time and is now 10%.

74.     Boyne has complete control over the amount it charges for the resort fee.

75.     The total amount Boyne earns from the resort fee is well over a million dollars yearly.

76.     Boyne does not share any portion of the resort fee with Condo owners.

77.     Boyne pays itself a breakfast fee for each person who stays at a property out of the base lodging rate.

78.     The amount Boyne charges for breakfast is well over a million dollars each year.

79.     Boyne has complete control over the amount it pays itself for breakfast.

80.     Boyne's use of the resort fee and breakfast fee are part of a scheme to artificially lower the "rental rate" in order to increase Boyne's profits at the expense of owners.

81.     Boyne also requires guests who book rooms in the Boyne Michigan Properties to pay certain amounts in advance.

82.     Condo owners cannot use their rooms if a guest books through Boyne.

83.     If a guest cancels their reservation, they forfeit some of their deposit.

84.     Forfeited deposits are part of the gross rental revenue.

85.     Boyne does not share any portion of the forfeited deposits with realty owners.

86.     The Rental Management Agreement also requires realty owners to make their Condos available up to two nights each year for complementary use ("comp nights"). Ex. 2, The Mountain Lodge & Spa Rental Management Agreement, ¶ 19.

87.     Boyne benefits by providing guests and its business partners comp nights.

88.     Boyne's manipulation of the rental program results in realty owners receiving far less than 50% of the gross rental revenue generated by their realty.

**IV.    Boyne conceals its conduct from Condo owners.**

89.     Boyne provides quarterly statements to property owners. Ex. 2, The Mountain Lodge & Spa Rental Management Agreement, ¶ 13.

90.     The quarterly statements do not disclose the gross rental rate, base lodging rate, hotel or resort taxes, resort fees, group tour and convention facility fees, incentive program costs, franchises-related fees and costs, forfeited deposits, or breakfast fees associated with properties owned by Plaintiffs or Class Members.

91.   Plaintiffs and Class Members cannot determine the rate at which Boyne rents their realty from the quarterly statements.

92.   Plaintiffs and Class Members cannot determine whether Boyne has withheld any amounts for hotel or resort taxes from the quarterly statements.

93.   Plaintiffs and Class Members cannot determine whether Boyne has paid itself any resort fee from the quarterly statements.

94.   Plaintiffs and Class Members cannot determine whether Boyne has paid itself any breakfast fee from the quarterly statements.

95.   Plaintiffs and Class Members cannot determine whether Boyne retained any forfeited deposits from the quarterly statements.

96.   Plaintiffs and Class Members cannot determine whether any amounts have been withheld by Boyne related to group tour and convention facility fees from the quarterly statements.

97.   Plaintiffs and Class Members cannot determine whether any amounts have been withheld by Boyne related to incentive program costs from the quarterly statements.

98.   Plaintiffs and Class Members cannot determine whether any amounts have been withheld by Boyne related to franchise-related fees and costs from the quarterly statements.

**V.   At the same time Boyne charges an improperly high rate for rental management services and misappropriates Condo owner funds, Boyne also imposes unreasonable costs on property owners.**

99.   Boyne also uses the Master Deeds and the RMA to impose unreasonable costs on Condo owners.

100.   The Mountain Grand Lodge and Spa Homeowner's Association annual budget includes several line-item expenses.

101.   Many of these expenses, including, but not limited to garbage removal, security, telephone, television, and Wi-Fi, are provided by Boyne or initially paid for by Boyne, and then up charged to the HOA.

102.   Condo owners have requested transparency from Boyne on the actual cost of these line items. Boyne refuses to disclose its expenses, taking further profit away from Condo owners.

103.   Further, Boyne charges a management fee as a line-item expense to the HOA. This fee is to cover the cost of Boyne managing the property, accounting, and finances.

104.   Yet, Condo owners already pay Boyne a management fee, 50% of the rental revenue from leasing their units. But that is not enough for Boyne. Boyne has successfully exploited the Condo owners at every turn so that it can make a profit while the owners barely break even.

105.   Another illustration of Boyne's improper behavior is the line-item expense for the Boyne Mountain Road Easement.

106.   The Mountain Grand Lodge and Spa is reached by Boyne Mountain Road.

107.   The county owns this road.

108.   Boyne does not incur costs maintaining this road, and yet, it charges the Condo owners a fee for using it.

109.   The latest example of this conduct is an upcoming renovation to The Mountain Grand Lodge and Spa with an estimated cost of $22,000,000.00 to $27,000,000.00.

110.   The RMA requires property owners to pay the costs of insurance, maintenance, and repair to properties. Ex. 2, The Mountain Grand Lodge & Spa Rental Management Agreement, ¶¶ 8–10.

111.    In 2023, Boyne imposed an additional assessment on Condo owners in The Mountain Grand Lodge and Spa. The charges imposed per Condo owner range from $9,378.45 to $37,513.80, depending on the type and number of units owned. The additional assessment will be imposed for six quarters.

112.    Boyne labeled this assessment as an "additional assessment" rather than a "special assessment" so that it would not have to receive owner approval to impose it. *See* Ex. 1, Master Deed – The Mountain Grand Lodge Condominium, Art. II, Sec. 2(B) of Exhibit "A" (special assessments "shall not be levied without the approval of more than 60% of the votes of all Co-Owners."); *see also* Ex. 3, Master Deed – The Alpine Village Condominium, Art. II, Sec. 2(B) of Exhibit "A".

113.    Due to the unreasonable expense of the assessment, thirty-nine Condo owners recently sold their units. Boyne was in line sine it has a right of first refusal—a right not shared with Condo owners. Boyne bought back all thirty-nine units.

114.    By siphoning revenue from the rental management program and imposing unreasonable costs on realty owners, Boyne has earned significantly more profits from the Boyne Michigan Properties than from any hotel or condo properties it wholly owns, separate and apart from any profits realized by Boyne from selling realty in the Boyne Michigan Properties.

**CLAIMS FOR RELIEF**

**COUNT I**
**Breach of Fiduciary Duty**

115.    The allegations set forth above and below are incorporated herein by reference.

116.    Boyne stood in a fiduciary capacity to Plaintiffs and Class Members.

117.    The contractual arrangement created by Boyne, where it sells realty and then requires all realty owners to use Boyne for rental management services, constitutes an investment

contract pursuant to the Michigan Securities Act, the Securities Act of 1933, and the Securities Exchange Act of 1934. MICH. COMP. LAWS § 451.2102c(c); 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10).

118.   Boyne effectively made itself the investment manager of an unregistered security it created, which it sold to Plaintiffs and Class Members.

119.   As rental manager, Boyne acts as an agent on behalf of Plaintiffs and Class Members.

120.   Boyne owes Plaintiffs and Class Members fiduciary duties, including the duty of good faith and loyalty. This requires Boyne to discharge its duties with the care of an ordinarily prudent person in a similar situation under similar circumstances and in a manner reasonably believed to be in the best interests of Plaintiffs and Class Members, and to refrain from acting out of greed, expediency, or self-interest in derogation of its duty of loyalty.

121.   Boyne has repeatedly breached those duties to Plaintiffs and Class Members as set forth above.

122.   In addition, Boyne has a conflict of interest; it stood to profit from transactions at the expense of Plaintiffs and Class Members, to whom it owes the highest fiduciary duties.

123.   Boyne has failed to disclose its conflicts of interests to Plaintiffs and Class Members.

124.   Boyne has failed to disclose its profits from the use of property owned by Plaintiffs and Class Members.

125.   Further, Boyne has a right of first refusal when an owner sells their unit. Ex. 1, Master Deed – The Mountain Grand Lodge Condominium, Art. VI, Sec. 18(A) of Exhibit "A"; Ex. 3, Master Deed – The Alpine Village Condominium, Art. VI, Sec. 18(A) of Exhibit "A".

126.     Boyne utilizes this right to profit at the Condo owner's expense by imposing assessments on Condo owners in the hopes they will sell their units to Boyne.

127.     Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial. Additionally, equity and good conscious require that all sums improperly obtained by Defendants be disgorged and restored to Plaintiffs and Class Members.

## COUNT II
## Constructive Fraud

128.     The allegations set forth above and below are incorporated herein by reference.

129.     Boyne, acting as a fiduciary and agent for realty owners, made representations to realty owners regarding the profits they would earn as owners, as well as the amount of payments Plaintiffs and Class Members were entitled to receive through participation in the rental management program.

130.     Those representations were untrue.

131.     Boyne made those representations without any reasonable ground for believing them to be true.

132.     Plaintiffs and Class Members were unaware of the falsity of the statements and acted in reliance on these statements.

133.     Boyne gained an advantage over Plaintiffs and Class Members by misleading Plaintiffs and the Class.

134.     Plaintiffs and Class Members have suffered damages as a result of Boyne's conduct.

135.     Plaintiffs and the Class Members have suffered damages as a direct and proximate result of the constructive fraud.

## COUNT III
## Breach of Contract

136.     The allegations set forth above and below are incorporated herein by reference.

137.    Plaintiffs and Class Members were parties to contracts with Boyne (the Master Deeds and Rental Management Agreements).

138.    Boyne breached its agreements with Plaintiffs and Class Members by charging more than a fair, competitive rental rate for the Boyne Michigan Properties.

139.    Under the Master Deeds, Boyne has the "sole discretion" to lease the Condo owner's units. *See* Ex. 1, Master Deed – The Mountain Grand Lodge Condominium, Art. VI, Sec. 18(C) of Exhibit "A" and Ex. 3, Master Deed – The Alpine Village Condominium, Art. VI, Sec. 18(C) of Exhibit "A".

140.    Under the RMAs, Boyne has the "sole discretion" to set the rental rates and control scheduling for Condo owners' units. *See* Ex. 2, The Mountain Lodge & Spa Rental Management Agreement, ¶ 6.

141.    Boyne has not acted within its sole discretion honestly and in good faith, breaching the implied covenant of good faith and fair dealing.

142.    Good faith requires "honesty in fact and the observance of reasonable commercial standard of fair dealing." MICH. COMP. LAWS § 440.1201(2)(t).

143.    By and through the actions and decisions described above, Boyne acted with dishonesty and/or departed from reasonable standards of fair dealing, depriving Plaintiffs and Class Members of the benefits of their agreements with Boyne.

144.    Plaintiffs and Class Members have been injured as a proximate result of Boyne's breach of contract as set forth above.

145.    As a result of Boyne's breach, Plaintiffs and Class Members are entitled to recover damages for Boyne's breaches along with interest.

### COUNT IV
### Unjust Enrichment/Constructive Trust

146. The allegations set forth above and below are incorporated herein by reference.

147. Boyne has received substantial benefits from requiring realty owners to use the rental management program.

148. In exchange, realty owners were entitled to a reasonable fee for Boyne's use of their property.

149. Boyne has enjoyed unwarranted benefits from use of realty owned by Plaintiffs and Class Members.

150. Plaintiffs and Class Members are entitled to disgorgement damages in an amount equal to all profits and/or revenue earned by Boyne through the rental management program.

## COUNT V
### Declaratory Judgment

151. The allegations set forth above and below are incorporated herein by reference.

152. A dispute exists between Plaintiffs and Class Members and Boyne concerning their respective rights and obligations under the Rental Management Agreement and the Master Deeds.

153. A justiciable controversy exists as contemplated by MICH. CT. R. 2.605 and its federal counterpart, 28 U.S.C. § 2201, but is not limited to violations of federal and state antitrust and securities laws.

154. Pursuant thereto, Plaintiffs and Class Members seek declaratory relief and ask this Court to enter judgment determining and enforcing their rights as appropriate under the RMAs and the Master Deeds, including, but not limited to, declarations that:

    a. The requirement that realty owners use Boyne as their rental agent is illegal, unconscionable, and unenforceable.

b.   The Master Deeds are illegal, unconscionable, and unenforceable to the extent that they give Boyne control over the rental management and the homeowners associations of the Boyne Michigan Properties.

## CLASS ALLEGATIONS

155.   Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification of a class under Rule 23(b)(1), (b)(2), and (b)(3).

156.   Class Definition. The Class is composed of all persons and entities, other than Boyne, that: (i) own or have owned realty in Boyne Michigan Properties; and (ii) participated in the Boyne rental management program.

157.   Numerosity. The Class is comprised of hundreds of persons throughout the United States and Canada, and is so numerous that joinder of all members is impracticable.

158.   Commonality. There are questions of law and fact common to the Class. The claims or defenses of Plaintiffs as the representative parties are typical of the claims or defenses of the Class. Further, the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

159.   Typicality and Adequacy. Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, and they are similarly situated with members of the Class. Plaintiffs, as the representative parties of the Class, will fairly and adequately represent and protect the interests of the Class. Furthermore, Plaintiffs' interests are not antagonistic in the prosecution of class action litigation.

160.   Predominance. Common questions of fact and law predominate over individualized issues. The facts surrounding Boyne's practices will clearly predominate over any individualized issues because this case centers on Boyne's rental management program. A class action is superior

to other available methods for the fair and efficient adjudication of the controversy. The interest of members of the Class in individually controlling the prosecution or defense of separate actions is not great given the amount in controversy and the difficulty of detection of the enterprise and proof of it; there is no other known litigation concerning the controversy already commenced by or against members of the Class; it is desirable to concentrate this litigation in one forum and there are no known difficulties likely to be encountered in the management of a class action.

## **DEMAND FOR JURY TRIAL**

161.    Plaintiffs respectfully demand a jury trial on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully request the following relief:

a.    Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1), (2), and/or (3) and direct that reasonable notice of this action, as provided by Fed. R. Civ. P.  23(c)(2) be given to the Class;

b.    Require Defendants to pay for sending notice to the certified Class

c.    Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

d.    Award equitable relief to correct for the anticompetitive market effects caused by Defendants' unlawful conduct and to ensure that similar anticompetitive conduct does not reoccur in the future;

e.    Award compensatory damages to Plaintiffs and the proposed Class in an amount to be established at trial, or, alternatively, require Defendant to disgorge or pay restitution in an amount to be determined at trial;

f.    Award treble damages as permitted by law;

g.    Award pre- and post-judgment interest at the highest rate allowed at law or equity;

h.    Award punitive damages based on Defendants' reprehensible and deliberate conduct;

i.    Award reasonable attorneys' fees and costs; and,

j.    For all such other and further relief as may be just and proper.

Date:   July 1, 2024

Respectfully submitted,

/s/ *Rex A. Sharp*
Rex A. Sharp, OK #11990
Isaac L. Diel, KS #14376
Macy G. Perry, OK #35709
SHARP LAW LLP
4820 W. 75th Street
Prairie Village, KS 66208
Tel.: (913) 901-0505
rsharp@midwest-law.com
idiel@midwest-law.com
mperry@midwest-law.com

Ben Alke, MT #8678
John G. Crist, MT #2651
CRIST, KROGH, ALKE & NORD, PLLC
209 S. Willson Ave.
Bozeman, MT 59715
Tel: (406) 255-0400
balke@cristlaw.com
jcrist@cristlaw.com

J. Devlan Geddes, MT #6513
Jeffrey J. Tierney, MT #12989
Henry J.K. Tesar, MT #66646208
GOETZ, GEDDES & GARDNER, P.C.
35 N. Grand
Bozeman, MT 59715
Tel: (406) 587-0618
devlan@goetzlawfirm.com
jtierney@goetzlawfirm.com
htesar@goetzlawfirm.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 1st day of July 2024, I electronically filed the above with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

/s/ *Rex A. Sharp*
Rex A. Sharp
Attorney for Plaintiffs